D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VON ROHR EQUIPMENT CORP.,

                  Plaintiff,

-against-

TANNER BOLT & NUT CORP., JEFF
TANNENBAUM and BRIAN SCHRODER,

                  Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-2913 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

On May 12, 2017, Plaintiff Von Rohr Equipment Corp. filed this action seeking monetary and injunctive relief against Defendants Tanner Bolt & Nut Corp. ("Tanner"), Jeff Tannenbaum, and Brian Schroder. (Compl. (Dkt. 1).) Plaintiff alleges that Tanner and Tannenbaum obtained certain of Plaintiff's confidential business information from Schroder, who was formerly employed by Plaintiff, and used that information to achieve an unfair commercial advantage over Plaintiff. (See, e.g., id. ¶ 1.)

Before the court is Defendants' motion for partial dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Mot. to Dismiss ("Mot.") (Dkt. 23).) For the following reasons, the court GRANTS IN PART and DENIES IN PART the Motion.

I.    **BACKGROUND**

Plaintiff is a New Jersey-based construction equipment supplier that provides "tools and equipment to trade contractors in the highly competitive markets of New York, New Jersey, Pennsylvania, and Connecticut." (Compl. ¶ 12.) Plaintiff asserts that "[o]ne of [its] key competitive advantages . . . is its substantial and longstanding customer relationships." (Id. ¶ 13.) Plaintiff further alleges that it "has . . . invested heavily in procuring strategic assets to expand its market as well as recruiting, training and retaining, at considerable cost, a sales and

1

management work force with dedicated subject matter expertise and whose members could be trusted with [Plaintiff's] proprietary sales data." (Id. ¶ 14.)

In May 2014, Plaintiff acquired Kass Building Supply, Inc. ("Kass"), as part of a strategy to expand its business to new customers and products. (Id. ¶¶ 15-16.) Plaintiff alleges that, when it purchased Kass, it obtained lists of Kass's customers, those customers' previous purchases, and information about vendor identities and pricing. (Id. ¶¶ 17-18.) Plaintiff also "retained key Kass employees . . . to manage and operate the former Kass business for [Plaintiff]." (Id. ¶ 20.)

Plaintiff hired Defendant Brian Schroder, a former Kass employee, roughly a year before it acquired Kass. (Id. ¶ 21.) Plaintiff avers that Schroder's role at Kass was "largely confined to . . . maintaining customer relationships with Kass customers." (Id. ¶ 22.) Plaintiff alleges that Schroder's hiring was conditioned on his agreement to sign a confidentiality agreement, which he did in May 2013. (Id. ¶ 23-24.) According to Plaintiff, that agreement contained the following language (the "Confidentiality Provision"):

> The protection of confidential business information and customer relationships is vital to the interest and the success of the Company.
>
> <u>Employees who improperly use or disclose trade secrets or confidential business information will be subject to termination and possible legal action.</u> Such information includes, but is not limited to, the following: lists of customers and potential customers; identity of customers and potential customers; customer contact people and buyers; the particular preferences and predilections of customers and their representatives; customer usages and requirements; sources of supply; identity of vendors and vendor contact people; proprietary information; processes; product information, including specifications, capabilities, availability and inventories; computer programs; marketing methods, plans and systems; present and future marketing strategy; identity of markets; sales methods; sales plans; sales information; cost information, including overhead; pricing information; profit information; business methods; financial information; any portion of the Company's database; plans for future development; and any other non-public business information and data.
>
> It is crucial that all employees abide by this policy in all respects.

(Id. ¶ 25 (emphasis added).)

The primary dispute in this case stems from alleged efforts by one of Plaintiff's competitors and that company's principal, Defendants Tanner and Tannenbaum (together, the "Tanner Defendants"), to recruit Schroder and another of Plaintiff's employees, Anthony Vicari. (Id. ¶ 28.) Plaintiff contends that this recruitment effort was part of a "scheme to solicit and hire [Plaintiff's] employees with the purpose of obtaining an unfair competitive commercial advantage over [Plaintiff] by wrongfully obtaining [Plaintiff's] Confidential Information." (Id. ¶ 27.) Plaintiff asserts that the Tanner Defendants' recruitment efforts were driven by an expectation that, once employed by Tanner, Schroder and Vicari would provide confidential information regarding Plaintiff's business. (Id. ¶ 29.) In particular, Plaintiff alleges that the Tanner Defendants sought access to information including Plaintiff's "individual customer contact information, customer buying habits, customer pricing, and vendor identity and pricing formulas." (Id. ¶ 1.)

Plaintiff avers that, during the recruitment effort, both Schroder and Vicari informed Tannenbaum that they were bound by the Confidentiality Agreement, and that Vicari "repeatedly" told Tanner that Plaintiff would likely bring legal action "on the assumption that [Vicari and Schroder] had been recruited with the intention of providing [Plaintiff's] Confidential Information to Tanner." (Id. ¶¶ 30-31.) Nevertheless, the Tanner Defendants offered jobs to Schroder and Vicari. (Id. ¶ 32.) Those offers included provisions that explicitly contemplated the possibility that Tanner would be required to defend Schroder and Vicari against litigation brought by Plaintiff, under which Vicari and Schroder's entitlement to

3

discretionary bonus payments would be limited in any month in which Tanner incurred $5,000 or more in legal fees defending against such litigation.[1] (Id. ¶ 33.)

While Vicari declined the employment offer, Schroder allegedly accepted and, on February 4, 2017, resigned from his position with Plaintiff with immediate effect. (Id. ¶¶ 35-36.) Following Schroder's departure, on February 6, 2017, Plaintiff avers that it sent a letter to Schroder and Tannenbaum stating that, in Plaintiff's view, Schroder was subject to employment and post-employment obligations "not to use, disclose, or otherwise misappropriate any confidential business information that [Schroder] learned during his employment." (Id. ¶¶ 37-38.) However, within a month of Schroder's departure, Plaintiff claims that "longtime . . . customers that Schroder serviced were either no longer buying from [Plaintiff] or were buying far less than in the past." (Id. ¶ 39.) Plaintiff then sent a "cease and desist" letter to Tanner, alleging that Schroder was violating his purported post-employment obligations to maintain the confidentiality of Plaintiff's propriety information and that "Tanner has, by implication, endorsed [Schroder's] unlawful conduct by virtue of its failure to stop him." (Id. ¶¶ 40-41.) Plaintiff alleges that the Tanner Defendants and Schroder have not complied with Plaintiff's demands as stated in its letters, have expressly denied having any post-employment obligation to refrain from using Plaintiff's confidential information, and have "continued to contact

---

[1] As quoted from Vicari's offer, the provision reads as follows:

**Employee's Contribution Towards Legal Fees.** Notwithstanding Employee's entitlement to the bonus . . . provided for above, as a material inducement to Tanner's employment of Employee, Employee agrees that in the event that any claims are asserted against Tanner or Employee, in court or otherwise, by Employee's former employer. Employee agrees that in any calendar month during which Tanner spends at least $5,000 in legal fees in defense of such claims or in resolving same. Employee will only be entitled to payment of one-half of any bonus to which he is otherwise entitled . . . for such month.

(Id. ¶ 33.) Plaintiff alleges, on information and belief, that Schroder's offer included substantially identical language. (Id. ¶ 34.)

4

[Plaintiff's] customers, including through the use of Confidential Information stolen from [Plaintiff]." (Id. ¶¶ 42-44.)

## II. PROCEDURAL HISTORY

Plaintiff filed its complaint in this court on May 12, 2017. (Compl.) Plaintiff asserts claims against all defendants under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., as well as common law claims of misappropriation of trade secrets, tortious interference with prospective business relations, unjust enrichment, and an action for accounting. (Id. ¶¶ 45-64, 72-78, 107-114.) Plaintiff also asserts separate breach of contract and breach of the duty of loyalty claims against Schroder (id. ¶¶ 86-99), and claims of tortious interference with contract, unfair competition, and aiding and abetting a breach of the duty of loyalty against the Tanner Defendants (id. ¶¶ 65-71, 79-85, 100-06). Plaintiff seeks an order enjoining Defendants and their agents from using any of Plaintiff's trade secrets and requiring Defendants to destroy or return[2] to Plaintiff all documents or materials which contain any such trade secrets. (Id. at ECF p.18). Plaintiff also seeks an award of actual, compensatory, and punitive damages in an unspecified amount, as well as costs and attorneys' fees. (Id. at ECF p.19.)

The complaint also seeks a preliminary injunction, to be converted to a permanent injunction at conclusion of trial. (Compl. at ECF 18). By separate motion filed on the same day that it filed the complaint, Plaintiff sought entry of a temporary restraining order and issuance of an order to show cause concerning the motion for a preliminary injunction. (Unsigned Order to Show Cause ("Unsigned OTSC") (Dkt. 3).) The court issued an order to show cause granting the

---

[2] The prayer for relief confusingly seeks both an injunction requiring Defendants to "certify[] that any and all documents containing [Plaintiff's confidential information] has [sic] been permanently destroyed" and "[t]o the extent not accomplished by the foregoing, [entry of] an Order requiring defendants to return to [Plaintiff] any and all documents and materials which reflect or contain [Plaintiff's] trade secrets, confidential or proprietary information." (Compl. at ECF p.18.) While the issue is not material at this point, Plaintiff must specify whether it seeks an injunction requiring Defendants to destroy confidential materials or an order requiring the return of those materials.

temporary restraining order and directing the parties to appear before Magistrate Judge Ramon E. Reyes, Jr., for hearings on the motion for a preliminary injunction. (Order to Show Cause (Dkt. 9).) Following evidentiary hearings held on May 16 and 17, 2017, Judge Reyes recommended that the court deny Plaintiff's motion for a preliminary injunction. (May 17, 2017, R&R.) The court adopted Judge Reyes's recommendation in full. (June 9, 2017, Order Adopting R&R (Dkt. 19).)

### III. DISCUSSION

Before the court is Defendants' motion to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot.; see also Mem. in Supp. of Mot. ("Defs. Mem.") (Dkt. 24).) Defendants move to dismiss Plaintiff's claims for breach of contract, tortious interference with a contract, tortious interference with prospective business relations, and Plaintiff's action for an accounting. (See generally Defs. Mem.)

For the following reasons, the court grants the Motion with respect to Plaintiff's claims for breach of contract, tortious interference with a contract, tortious interference with prospective business relations, and Plaintiff's action for an accounting as against the Tanner Defendants, but denies the Motion with respect to Plaintiff's action for an accounting against Schroder.

#### A. Legal Standard

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted).

### B. The Disputed Claims

#### 1. Breach of Contract

Defendants present two separate arguments in favor of dismissing Plaintiff's breach of contract claim against Schroder. First, Defendants claim that the document that forms the basis for the claim is not in fact a "contract" but is instead an employment application and an appended, unsigned policy. (Defs. Mem. at 3-4.) Second, Defendants contend that, even if the document in question is viewed as a contract, its terms do not impose on Schroder any post-employment obligations. (Id. at 4-5.) Plaintiff both contests these arguments and counters that Defendants' arguments, based as they are on documents outside the complaint, are insufficient to

merit dismissal of facially valid claims presented in the complaint. (Pl. Mem. in Opp'n to Mot. ("Pl. Opp'n") (Dkt. 25) at 3-9.)

In order to assert a claim for breach of contract under New York law,[3] the plaintiff must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of the defendant to perform; and (iv) damages." Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d Cir. 2016) (internal quotation marks and citation omitted). Where a motion to dismiss is based on the terms of the contract, dismissal is only proper if those terms are unambiguous. Id. A contract is ambiguous, in turn, if its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A., 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks and citation omitted).

As a threshold matter, the court notes that Plaintiff is mistaken that the alleged contract may not be considered in assessing the challenged breach of contract claim. It is true that, as a general matter, courts assessing motions to dismiss are limited to consideration of the complaint and documents appended thereto. Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011). However, as noted above, "the court may also consider any written instrument . . . incorporated in the complaint by reference, as well as documents upon which the complaint relies and which

---

[3] While the parties do not address any potential choice-of-law questions, both Plaintiff and Defendants cite exclusively to New York law in their briefing. Because the parties do not dispute the issue and have not suggested an alternative, the court is not obligated to consider the issue sua sponte and instead concludes that the parties have consented to application of the law of New York as the forum state. See, e.g., Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (internal quotation marks and citation omitted)); Henneberry v. Sumitomo Corp. of Am., No. 04-CV-2128 (PKL), 2005 WL 991772, at *5 n.3 (S.D.N.Y. Apr. 27, 2005) ("Plaintiff's claims are governed by state law, but the parties have not raised choice of law issues. Instead, the parties' briefs assumed that New York State law applies. Where the parties so assume, the Court need not address choice of law sua sponte.").

are integral to the complaint." Subaru Distribs., 425 F.3d at 122. Where, as here, a plaintiff's claim is based explicitly on the terms of an alleged contract and the complaint incorporates those express terms, the document is treated as integral to the pleading and thus properly considered on a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 & n.4 (2d Cir. 2002) (concluding that district court considering motion to dismiss breach of contract and other claims did not err in weighing contracts because they were "integral to the Amended Complaint," which was "replete with references to the contracts and requests judicial interpretation of their terms"); Axiom Inv. Advisors, LLC, v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n, 655 F.3d 136, 141 (2d Cir. 2011)) (holding that, in a breach of contract action, the document on which the complaint is based is "by definition [] integral to the complaint").

The document at issue in Plaintiff's breach of contract claim contains two parts, an "application for employment" and an "employment policy." (See Ex. B to Mot. ("Employment Appl.") (Dkt. 23-1).) The application section of the document requests information regarding applicants' background and employment history and contains a signature page which requires applicants to (1) certify that information they provided in the application is true; (2) authorize investigation of those statements; and (3) agree that any employment resulting from the application would be on an "at-will" basis. (Id. at ECF p.5.) The second section of the document lists employment policies regarding "Confidential and Trade Secret Information" and includes the Confidentiality Provision quoted in Section I, supra.

Defendants contend that this document does not constitute a contract as a matter of law and that, even if it does, it is insufficient to give rise to post-employment obligations and thus does not support Plaintiff's breach of contract claim. The court need not decide the first point, as

it instead concludes that, even if the document is a contract, it does not give rise to post-employment obligations and so cannot support the breach alleged here. On its face, the employment policy—and the Confidentiality Provision in particular—refers only to "employees," stating that it is "crucial that all employees abide by this policy" and threatening to terminate and possibly sue any "employees" who fail to do so. (Employment Appl. at ECF pp.6-7.) The exclusive use of "employees" as the covered persons and the reference to "termination" as the remedy for violation of the policy unambiguously demonstrate that the policy contemplates only conduct during employment. Given this limitation, the court concludes that allegations regarding post-employment actions by Schroder cannot satisfy the required showing of a "failure of the defendant to perform" under the alleged contract.

While Plaintiff suggests that the included threat of legal action demonstrates that policy applies to post-employment conduct, this argument misses the mark because it conflates the conduct prohibited in the policy with the consequences of violating that prohibition. The fact that litigation based on actions taken <u>during</u> an individual's employment may commence or continue after an employee no longer works at the company has no logical relationship to whether an individual may be sued for actions taken <u>after</u> their employment. In other words, that the <u>consequences</u> of violating obligations imposed by the employment policy may extend after employment does not mean that the <u>obligations</u> imposed by the policy continue post-employment.

Plaintiff also argues that "[Plaintiff's] breach of contract action alleges Schroder breached his agreement with [Plaintiff] during the term of his employment." (Pl. Opp'n at 7.) In support of this argument, Plaintiff points to statements in the complaint that:

- "Plaintiff entrusted its Confidential Information to [] Schroder . . . on the condition . . . that Schroder protect and maintain its confidentiality both during and after his employment" (Compl. ¶ 51);

- "Schroder's Confidentiality Agreement . . . obligates him to . . . refrain from disclosing [Plaintiff's] Confidential Information during the term of his employment" (Id. ¶ 66);

- "Schroder acknowledged that he would abide by the terms of [the] confidentiality policy which . . . required Schroder to protect the confidentiality of [Plaintiff's] Confidential Information during the term of his employment" (Id. ¶ 87);

- "Upon information and belief, Schroder has breached the Confidentiality Agreement by, among other things, (i) failing to protect the confidentiality of [Plaintiff's] Confidential Information during the term of his employment . . . ; or (ii) otherwise promising not to protect the confidentiality of [Plaintiff's] Confidential Information during the term of his employment" (Id. ¶ 89.)

From this, Plaintiff argues that the complaint sufficiently alleges a violation of the policy during Schroder's employment and so fits within the express terms of that policy. (Pl. Opp'n at 8.)

In the court's view, however, these allegations are insufficient to salvage Plaintiff's breach of contract claim. At the outset, the court notes that the first three statements cited by Plaintiff do not in fact pertain to any conduct by Schroder during his employment with Plaintiff, but instead speak only to the scope of the Confidentiality Provision. With respect to the remaining statement—that Schroder "breached the Confidentiality Agreement by . . . failing to protect the Confidentiality of [Plaintiff's] Confidential Information during the term of his employment" (Compl. ¶ 89)—the court finds this conclusory allegation regarding the timing and nature of Schroder's actions to be insufficient to support Plaintiff's breach of contract claim. See Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) ("The bare allegations that Defendants 'failed to make timely payments' and 'failed to properly account' to Plaintiffs are, without more, conclusory." (internal citation omitted)). After searching the complaint, the court notes only one other statement which, in similarly perfunctory language, might be read as

alleging that Schroder disclosed confidential information during the period of his employment. (See id. ¶ 102 (alleging that the Tanner Defendants aided and abetted Schroder's "breach of his duty of loyalty . . . when they directed, encouraged, facilitated, or permitted Schroder <u>during the term of his employment</u> . . . to improperly use [Plaintiff's] confidential information which he obtained through his employment." (emphasis added).) In contrast, the complaint expressly alleges that the claimed disclosure of confidential information occurred after Schroder began working for Tanner. (See, e.g., Compl. ¶ 29 ("Tannenbaum expected that <u>once they came to work for Tanner</u>, Schroder and Vicari would provide Tanner with [Plaintiff's] Confidential Information." (emphasis added); cf. also ¶¶ 44 ("Schroder and Tanner have continued to contact [Plaintiff's] customers."), 39 (alleging that the decrease in sales began after Schroder's departure from Plaintiff's employ).) In the absence of non-conclusory allegations of fact in support of Plaintiff's claim, the court is not required to credit Plaintiff's contention that Schroder violated his alleged contractual duties during the term of his employment. See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

Accordingly, the court concludes that Plaintiff has failed to properly plead a breach of contract by Schroder and dismisses that claim without prejudice.

    2.    <u>Tortious Interference with Contract</u>

Defendants next challenge Plaintiff's tortious interference with contract claim, asserted against the Tanner Defendants. (Defs. Mem. at 6-7.) In order to establish a claim of tortious interference with contract under New York law, Plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of that contract without

justification, and (4) damages." See Nagan Constr., Inc. v. Monsignor McClancy Mem'l High Sch., 986 N.Y.S.2d 532, 533 (N.Y. App. Div. 2014). Implicit, of course, in these elements is the requirement that the third-party actually breach a contact. See, e.g., Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (citing Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996)) (listing "actual breach" as one of the elements of tortious interference with contract). Here, however, the only contract alleged to have been breached is Schroder's claimed confidentiality agreement with Plaintiff. (Compl. ¶ 68.) As discussed supra in Section III.B.1, Plaintiff has not pleaded a breach of that agreement, even assuming arguendo that it is a contract. For the same reason, Plaintiff's claim that the Tanner Defendants procured Schroder's breach of that contract fails.

Accordingly, the court dismisses Plaintiff's tortious interference with contract claim without prejudice.

### 3. Tortious Interference with Prospective Business Relations

Defendants next move to dismiss the tortious interference with prospective business relations claim asserted against the Tanner Defendants. Defendants argue the claim is insufficiently pled because Plaintiff fails to allege that the Tanner Defendants interfered with relationships with specific third parties or state how such interference occurred. (Defs. Mem. at 8.)

In order to state a claim for tortious interference with prospective business relations, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006)

(internal quotation marks and citation omitted). In order to survive a motion to dismiss, the plaintiff must allege that it was "actually and wrongfully prevented from entering into or continuing in a <u>specific</u> business relationship." Korn v. Princz, 641 N.Y.S.2d 283, 283 (N.Y. App. Div. 1996) (emphasis added); see also DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 115 (2d Cir. 2010) ("[T]he complaint fails entirely to describe any third party with whom [the plaintiff] had prospective business relations to be interfered with. The lack of such an allegation is fatal to this claim." (internal citation omitted)); Bus. Networks of N.Y., Inc. v. Complete Network Solutions, Inc., 696 N.Y.S.2d 433, 435 (N.Y. App. Div. 1999) ("Concerning the motion to dismiss, the cause of action for tortious interference with prospective business relations should have been dismissed for failure to allege any specific prospective relationship with which defendants interfered."); accord Pacheco v. United Med. Assocs., P.C., 759 N.Y.S.2d 556, 559 (N.Y. App. Div. 2003).

The complaint falls short of the required pleading standard, as it fails to identify any specific business relationship with which the Tanner Defendants allegedly interfered. Plaintiff offers the wholly spurious argument that no such identification is required in order to survive a motion to dismiss. This argument disregards the vast number of binding opinions holding just the opposite, a small sample of which are cited in the preceding paragraph. Moreover, while Plaintiff purports to distinguish away one—and only one—of the cases cited by Defendants, it does so by merely cherry-picking quotes from that opinion while disregarding language that directly supports Defendants' position. See Four Finger Art Factory, Inc. v. Dinicola, No. 99-CV-1259 (JGK), 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000) (concluding that the tortious interference with prospective business relations claim should be dismissed because "the complaint does not specify any business relations with third parties with which any of the

defendants interfered, or any economic opportunities which were lost as a result of the defendants' conduct.").

Plaintiff attempts to rescue the claim by pointing to allegations in the declarations submitted in connection with its motion for a preliminary injunction, which specifically identify several such relationships. (Pl. Opp'n at 11 n.4; see also Decl. of John Cancelliere (Dkt. 6) ¶¶ 29-32; Decl. of Anthony Vicari (Dkt. 7) ¶¶ 38-47.) As discussed supra at Section III.B.3, a court assessing a motion to dismiss is only to consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs., 425 F.3d at 122; see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)[,] matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The declarations in question were submitted as annexes to Plaintiff's unsigned order to show cause seeking a temporary restraining order, not the complaint. (Unsigned OTSC at 1.) Moreover, the complaint contains no reference, explicit or otherwise, to those declarations. Accordingly, the court declines to review those declarations in reviewing the present motion to dismiss.[4] See Cooper v. N.Y. State Dep't of Mental Health, No. 01-CV-943 (AGS), 2001 WL 456348, at *3 (S.D.N.Y. May 1, 2001) ("The parties have submitted affidavits in connection with this motion and the previously decided motions for preliminary injunctions. The Court excludes those affidavits and decides this Rule 12(b)(6) motion based solely on the complaint and the parties' legal arguments.").

---

[4] If Plaintiff files an amended complaint in response to this order, it may of course include allegations from those declarations to bolster its claims. Cf. Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir. 1985) (stating that affidavits submitted in connection with motion for preliminary injunction "indicate that the complaint could readily have been amended to afford greater particularity, and we have little doubt that the district court should and would have permitted an amendment").

15

For the foregoing reasons, Plaintiff's claim of tortious interference with prospective business relations against the Tanner Defendants is dismissed without prejudice.

4. Accounting

Defendants' final challenge is directed at Plaintiff's action for an accounting asserted against Schroder.[5] Defendants contend that Plaintiff fails to allege the presence of a fiduciary duty and that the action is duplicative of the previously discussed breach of contract claim. (Defs. Mem. at 9-11.) The court disagrees and concludes that the action for an accounting has been adequately pled.

"The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." LoGerfo v. Trs. of Columbia Univ. in the City of N.Y., 827 N.Y.S.2d 166, 169 (N.Y. App. Div. 2006) (internal quotation marks and citation omitted). In order to bring an equitable action for an accounting, the plaintiff must show "(1) a relationship of a fiduciary or confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) the absence of an adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." Matsumura v. Benihana Nat'l Corp., No. 06-CV-7609 (NRB), 2007 WL 1489758, at *4 (S.D.N.Y. May 21, 2007).

Defendants first contend that Plaintiff fails to establish the existence of a fiduciary or confidential relationship.[6] Characterizing Plaintiff's claim as based only on the purported

---

[5] In its response, Plaintiff withdraws its claim for an accounting against the Tanner Defendants (Pl. Mem. at 13 n.5), and so the court dismisses the claim against those defendants.

[6] Some courts have indicated that a confidential or fiduciary relationship is not required where, as here, the plaintiff's action for an accounting primarily seeks money damages. See, e.g., Arrow Commc'n Labs., Inc. v. Pico Prods., Inc., 632 N.Y.S.2d 903, 905 (N.Y. App. Div. 1995) (holding that, where the "primary demand [in an accounting action] is for monetary damages, the accounting is merely a method to determine the amount of the

contract between Schroder and Plaintiff, discussed at greater length in Section III.B.1, Defendants point to cases holding that a fiduciary relationship may not, without more, be based on contractual undertakings. (Defs. Mem. at 10.) Defendants' argument disregards the employment relationship between Schroder and Plaintiff that resulted from that agreement, however. Courts have repeatedly held that the fiduciary relationship required to support an action for an accounting may be found where an employee acts against the interests of their employer by using confidential information obtained during the course of their employment.[7] See Nutronics Imaging, Inc. v. Danan, No. 96-CV-2950, 1998 WL 426570, at *3 (E.D.N.Y. June 10, 1998) (finding action for an accounting adequately pleaded where defendant allegedly formed a competitor to employer and solicited employer's customers while still employed); Krause v. Gelman, 580 N.Y.S.2d 750 (N.Y. App. Div. 1992) (finding action for an accounting based on diversion of business while the defendant was employed by the plaintiff was adequately pleaded). Accordingly, the court concludes that Schroder's undisputed prior employment relationship with Plaintiff is sufficient to establish the required fiduciary or confidential relationship.

Defendants next argue that Plaintiff's breach of contract claim demonstrates that Plaintiff does, in fact, have an adequate remedy at law and obviates the need for an accounting.

---

monetary damages . . . . [and] sounds in law and not in equity." (intentional quotation marks and citation omitted)). Because the court finds that the required relationship is adequately alleged here, it does not decide whether that element is required to be proven.

[7] The court notes the seeming tension between its decision as to the breach of contract action, with respect to which it concluded that the complaint fails to allege any actions that Schroder took during the course of his employment with Plaintiff, and the conclusion here that an action for an accounting may proceed under the same facts. The difference in these outcomes results from the language of the purported contract itself, which forbids the "use or disclos[ure] of trade secrets or confidential business information" by current employees. (Employment Appl. at 6.) By contrast, even if Schroder did not take any affirmative action to use or disclose confidential information during his employment with Plaintiff, his post-employment use of information obtained while engaged in a fiduciary relationship constitutes an actionable violation of his duty to the employer. Cf., e.g., Kaufman v. Int'l Bus. Machs. Corp., 470 N.Y.S.2d 720, 723 (N.Y. App. Div. 1983) ("The duty of an employee not to use or divulge confidential knowledge acquired during his employment is implicit in the employer-employee relation [and] is an absolute, and not a relative, duty." (internal quotation marks and citation omitted)).

Numerous decisions have dismissed accounting actions where the claims are duplicative of a breach of contract claim asserted in the same complaint. See, e.g., Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011) ("Even if Plaintiffs had adequately alleged the existence and breach of a fiduciary duty, their claims would nonetheless be 'merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract.'" (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 390 (N.Y. 1987)); cf. Leveraged Leasing Admin. Corp. v. PacificCorp Capital, Inc., 87 F.3d 44, 49 (2d Cir. 1996) (approving dismissal of an accounting action that was duplicative of a breach of contract action). However, the same duplication concerns do not arise where, as here, the breach of contract claim has been dismissed. Under the circumstances, the court does not see a basis to conclude that Plaintiff has an adequate remedy at law that merits dismissal of the action for an accounting.

Defendants' final argument, stated only in passing, is that Plaintiff does not allege that he entrusted Schroder with any money. (Defs. Mem. at 11.) This argument misses the second prong of that element of the action for an accounting, which requires an allegation that the defendant was entrusted with either money or property. See Matsumura, 2007 WL 1489758, at *4. Here, Plaintiff alleges that it entrusted Schroder with confidential business information regarding Plaintiff's customers and sales in the course of his employment. (Compl. ¶¶ 46-50.) This allegation is sufficient to meet Plaintiff's burden with respect to the "money or property" requirement at this stage. See, e.g., Nutronics Imaging, 1998 WL 426570, at *3.

Accordingly, Defendants' motion to dismiss the action for an accounting against Schroder is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for partial dismissal of the complaint (Dkt. 23) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for breach of contract, tortious interference with contract, tortious interference with prospective business relations, and Plaintiff's action for an accounting as to Tanner Bolt & Nut Corp. and Jeff Tannenbaum are DISMISSED WITHOUT PREJUDICE. Defendants' motion to dismiss Plaintiff's action for an accounting as to Brian Schroder is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
November 6, 2017

NICHOLAS G. GARAUFIS
United States District Judge